[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 09, 2001
THOMAS K. KAHN
CLERK

No. 01-10261

_____

D.C. No. 00-00153-CV-1-MMP

FREDERICK ARTHUR SHOTZ,
JOSEPH TACL,

Plaintiffs-Appellants,

versus

ROBERT P. CATES, in his capacity as
Chief Judge of the Eighth Judicial Circuit,
TED GLASS, in his official capacity as
Sheriff of Levy County,
LEVY COUNTY, a political subdivision of
the State of Florida,

Defendants-Appellees,

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(July 9, 2001)**

Before TJOFLAT, BLACK and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

Plaintiffs Frederick Shotz and Joseph Tacl sued Levy County ("the County"), Judge Frederick Smith, and Sheriff Ted Glass, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; 42 U.S.C. § 1983; the Florida Civil Rights Act; and Florida Statutes § 413.08. The district court dismissed the complaint for lack of standing and for failure to state a claim. We conclude that the plaintiffs have stated a claim under the ADA, but that they lack standing to seek injunctive relief.

## I. Background

As we must on a motion to dismiss, we accept the facts as alleged in the complaint. See Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). Plaintiffs Shotz and Tacl are disabled persons residing in Florida. Shotz cannot walk and uses a wheelchair and service dog to get around. Tacl suffers from a disability that requires the use of a cane and wheelchair.

In July 1999, Shotz attempted to enter the Levy County Courthouse with his service dog in order to attend a trial in Judge Frederick Smith's courtroom. After sheriff's deputies told Shotz that dogs were not permitted to enter the building, Shotz informed them of his ADA right to use a service dog inside public buildings. After some delay, Judge Smith questioned Shotz about his need for his dog and

2

eventually granted permission for the dog to remain in the courtroom.

Tacl alleges that in late July 1999, he was tried before Judge Smith on unspecified criminal charges. Tacl requested that a hospital bed be provided him during the trial on account of his disability. Judge Smith declined to provide a hospital bed, but allowed Tacl to use one that he obtained at his own expense.

In addition, both Shotz and Tacl allege that Levy County "violated the Americans with Disabilities Act by failing to remove barriers to access by persons with physical disabilities at the Levy County Courthouse where such barrier removal is necessary to render the courthouse readily accessible to and usable by individuals with disabilities." More specifically, the complaint states that Shotz and Tacl "were confronted by the many architectural barriers contained within the Courthouse, including a) curb ramps with slopes more than two times the maximum allowable slope and b) bathroom stalls with insufficient clear floor space." They seek injunctive relief compelling to the County to comply with the ADA.

The district court granted the defendants' motion to dismiss. The plaintiffs' appeal raises two issues: (1) whether the district court erred by dismissing their claim that the courthouse failed to comply with the ADA's provision barring the exclusion of disabled people from a public entity's programs, services, or

3

activities, and (2) whether the plaintiffs have standing to bring such a claim.[1]

## II.   Discussion

We review de novo a district court's ruling on a motion to dismiss.  Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  We may only affirm the dismissal of the complaint if it is clear that "no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

*A.   Stating a claim under Title II*

To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he is a "qualified individual with a disability ;" (2) that he was "excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity" or otherwise "discriminated [against] by such entity ;" (3) "by reason of such disability."  42 U.S.C. § 12132.  Levy County is undoubtedly a "public entity" within the meaning of § 12132.  See 42 U.S.C. § 12131 ("The term public entity means . . . any State or local government.").  The County does not

---

[1]In addition, Shotz claimed that the defendants violated the ADA by initially refusing to allow him to enter the courthouse with his service dog.  Tacl claimed that Judge Smith violated the ADA by not providing him a hospital bed to use during the course of his trial.  The district court dismissed both claims for lack of standing, noting that neither plaintiff had suffered injury in fact because a) Shotz and his dog eventually were allowed into the courtroom, and b) Judge Smith allowed Tacl to use his own hospital bed during the trial.  Neither Shotz nor Tacl appeals the dismissal of these claims.

dispute that the plaintiffs properly have alleged that they are "qualified individuals with a disability."  Rather, the County contends that the plaintiffs have not properly alleged that they were excluded from or denied the benefits of the County's services, programs, or activities, or otherwise discriminated against on account of their disability.

Regulations issued pursuant to the ADA[2] state that "no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."  28 C.F.R. § 35.149.  A public entity must make its services, programs, or activities "readily accessible" to disabled individuals.   See 28 C.F.R. § 35.150 ("A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.").  A public entity need not "make structural changes in existing facilities where other methods are effective in achieving compliance with this section."  28 C.F.R. §

_____

[2]Because Congress explicitly authorized the Attorney General to promulgate regulations under the ADA, see 42 U.S.C. § 12134(a), the regulations "must [be given] legislative and hence controlling weight unless they are arbitrary, capricious, or plainly contrary to the statute." United States v. Morton, 467 U.S. 822, 834 (1984).

35.150(b)(1).[3] For example, if one facility is inaccessible, a public entity may comply with Title II by making its services, programs, and activities available at another facility that is accessible. See Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir. 2000).

Pursuant to these requirements, the County was obligated to ensure that each service, program, or activity at its courthouse, "when viewed in its entirety," was readily accessible to individuals with disabilities. Id. Here, the plaintiffs have alleged that certain aspects of the Levy County Courthouse prevent them from enjoying the services, programs, and activities offered there. Specifically, Shotz and Tacl allege that the wheelchair ramps and bathrooms at the courthouse impede their ability to attend trials at the courthouse. A trial undoubtably is a service,

---

[3]28 C.F.R. § 35.150(b)(1) provides:

A public entity may comply with the requirements of this section through such means as redesign of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities and construction of new facilities, use of accessible rolling stock or other conveyances, or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities. A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section. A public entity, in making alterations to existing buildings, shall meet the accessibility requirements of § 35.151. In choosing among available methods for meeting the requirements of this section, a public entity shall give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate

program, or activity within the meaning of § 12132. See Layton v. Elder, 143 F.3d 469, 472 (8th Cir. 1998) (holding that Title II requires that county court be made accessible to disabled persons).

The County contends that because both Shotz and Tacl were able to attend the trial, they have not alleged a violation of Title II. A violation of Title II, however, does not occur only when a disabled person is completely prevented from enjoying a service, program, or activity. The regulations specifically require that services, programs, and activities be "readily accessible." 28 C.F.R. § 35.150. If the Courthouse's wheelchair ramps are so steep that they impede a disabled person or if its bathrooms are unfit for the use of a disabled person, then it cannot be said that the trial is "readily accessible," regardless whether the disabled person manages in some fashion to attend the trial. We therefore conclude that the plaintiffs have alleged a set of facts that, if true, would constitute a violation of Title II. Accordingly, they have stated a claim under Title II.[4]

B. *Standing*

---

[4]The County also argues that the plaintiffs have failed to allege that the architectural changes are "readily achievable." The regulations require that changes be made unless they would necessitate "a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." 28 C.F.R. 35.150(a)(3). The County mistakenly points to Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iv), which applies to "public accommodations" not "public entities," and which requires that the architectural changes be readily achievable.

The County argues that even if the plaintiffs have stated a claim under the ADA, they do not have standing to seek injunctive relief because there is no likelihood that they will suffer future discrimination.

A plaintiff must demonstrate three things to establish standing under Article III. First, he must show that he has suffered an "injury-in-fact." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Second, the plaintiff must demonstrate a causal connection between the asserted injury-in-fact and the challenged action of the defendant. Id. at 560. Third, the plaintiff must show that "the injury will be redressed by a favorable decision." Id. at 561 (citations and internal quotations omitted). These requirements are the "'irreducible minimum' required by the Constitution" for a plaintiff to proceed in federal court. Northeastern Fla. Chapter, Associated Gen. Contractors of America v. City of Jacksonville, 508 U.S. 656, 664 (1993) (citation omitted).

In addition, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges . . . a real and immediate–as opposed to a merely conjectural or hypothetical–threat of future injury." Wooden v. Board of Regents of University System of Georgia, 247 F.3d 1262, ____ (11th Cir. 2001). On defendants' motion to dismiss we must evaluate standing based on the facts alleged in the complaint, and we may not "speculate

8

concerning the existence of standing or 'piece together support for the plaintiff.'"

Cone Corp. v. Florida Dept. of Transp., 921 F.2d 1190, 1210 (11th Cir. 1991)

(citation omitted).

In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant. See Proctor v. Prince George's Hosp. Ctr., 32 F. Supp.2d 830 (D. Md. 1998); Hoepfl v. Barlow, 906 F. Supp. 317 (E.D. Va. 1995); Aikins v. St. Helena Hosp., 843 F. Supp. 1329 (N.D. Cal. 1994). In Proctor, the plaintiff admitted that it was purely speculative whether he would have to visit the hospital, given the fact that his only other visit was because of a motorcycle accident. 32 F. Supp.2d at 833. In Hoepfl, the court stated "because [the plaintiff] now resides in a different state, it is highly unlikely that she will ever again be in a position where any discrimination by [the defendant] against disabled individuals will affect her personally." 906 F. Supp. at 320. In Aikins, the plaintiff owned a mobile home at which she stayed only several days a year. 843 F. Supp. at 1333. During one such visit, she alleged that she was discriminated against by a nearby hospital. Id. The court concluded that the limited amount of time she spent in the area, coupled with the fact that she visited the hospital only because of her husband's illness, failed to suggest a "real or immediate threat" of future

9

discrimination by the hospital.  Id. at 1333-34.  See also Tyler v. The Kansas Lottery, 14 F. Supp.2d 1220 (D. Kan. 1998) (plaintiff who had since moved to Wisconsin was unlikely to be harmed by discrimination at lottery outlets in Kansas).

Here, the plaintiffs do not allege a real and immediate threat of future discrimination.  The complaint contains only past incidents of discrimination. "Injury in the past, however, does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment."  Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1348 (11th Cir. 1999).  More importantly, since their July 1999 visit to the Levy County Courthouse, the plaintiffs have not attempted to return, nor have they alleged that they intend to do so in the future.  Absent such an allegation, the likelihood of future discrimination remains "conjectural, hypothetical, or contingent," and not "real and immediate." Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985).  Accordingly, the plaintiffs do not have Article III standing.

## III.   Conclusion

The plaintiffs, who allege that architectural barriers impede their attendance at trials held in the Levy County Courthouse, have stated a cause of action under Title II of the Americans with Disabilities Act.  The plaintiffs, however, do not

have standing to seek injunctive relief because they have not alleged an immediate and real threat of future injury. Accordingly, the district court properly granted defendants' motion to dismiss.

AFFIRMED.