[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

--------------------------------------

No. 06-11523
Non-Argument Calendar

--------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 28, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 01-01449-CV-J-16MCR

GENE A. YOUNGBLOOD,
individually and as Chairman
of the Board/Pastor of First
Southern Baptist Church,
FIRST CONSERVATIVE BAPTIST
CHURCH OF JACKSONVILLE, a
Florida not-for-profit corporation,

Plaintiffs-Appellants,

versus

FLORIDA DEPARTMENT OF HEALTH,
an agency/political subdivision of the State
of Florida,
JAMES SLIVA, as an individual and/or
as an agent/employee of the State of Florida
Department of Health,
WILLIAM NOWLIN, as an individual and/or
as an agent/employee of the State of Florida
Department of Health,
ADELINE DOBSON, as an individual and/or
as an agent/employee of the State of Florida
Department of Health,
CITY OF JACKSONVILLE, FL,

DAVID BOYD, as an individual and/or as an agent/employee of the City of Jacksonville, FL, ROGER BUTLER, as an individual and/or as an agent/employee of the City of Jacksonville, FL, CHUCK PERRETT, as an individual and/or as an agent/employee of the City of Jacksonville, FL, et al.,

Defendants-Appellees.



Appeal from the United States District Court
for the Middle District of Florida

**(March 28, 2007)**

Before EDMONDSON, Chief Judge, ANDERSON and BIRCH, Circuit Judges.

PER CURIAM:

Gene A. Youngblood and First Conservative Baptist Church of Jacksonville ("Plaintiffs") appeal the district court's grant of summary judgment for the Florida Department of Health ("DOH"); DOH employees James Sliva, Adeline Dobson, and William Nowlin; the City of Jacksonville ("City"); and City employees David Boyd, Roger Butler, and Chuck Perrett (collectively "Defendants"). Because no reversible error has been shown, we affirm.

Viewing the record in the light most favorable to Plaintiffs, these assertions are the facts. Plaintiffs possess real property on which they operate the First

Conservative Baptist Church ("church") and the Conservative Christian Academy ("school"). Under state law, the DOH conducts periodic and unscheduled inspections of school and food-service facilities. On 2 May 2001, Defendant Sliva was granted access to and entered the property to conduct an inspection. During the inspection of a kitchen area used by the school, Sliva saw a playground and walked out to inspect it. Youngblood, the pastor of the church, told Sliva that the church playground was not part of the school and therefore beyond his authority to inspect.

Although Sliva completed a report on which he marked the inspection as "complete" and "satisfactory," he told his supervisor, Defendant Dobson, that he was not given access to inspect the playground or classrooms. Dobson then discussed the inspection with her supervisor, Gale Tucker, who decided that DOH should return to the property for further inspection of the classrooms and playground. Tucker wrote Youngblood a letter about this decision, but Youngblood called DOH to tell the agency not to return. DOH then coordinated with the Jacksonville Sheriff's Office ("JSO") to provide security during the planned inspection.

On 16 May 2001, DOH inspectors and JSO officers arrived at the property and entered the foyer area. Dorothy Youngblood, wife of the pastor, informed

3

Defendants that they could not inspect the premises without her husband's approval. Officers then threatened to arrest and to incarcerate Mrs. Youngblood if she did not allow inspectors "into the church."[1] Pastor Youngblood then arrived on the scene and told Defendants that, without a warrant, they could inspect only what they normally inspect. Officers then threatened to arrest the pastor if he did not submit to the inspection of "all the facilities."[2] After Youngblood again refused access, officers issued a Notice to Appear for Youngblood's alleged violation of Florida law.[3]

Plaintiffs' complaint, filed in part under 42 U.S.C. §§ 1983, 1985, alleged many violations of state and federal constitutional rights, including free exercise of religion, equal protection, due process, privacy, and the right to be free from unlawful search and seizure. Plaintiffs also claimed that the DOH and the City were negligent in supervising and retaining their employees and that Defendants conspired to violate Plaintiffs' rights. First, the district court correctly granted in

[1] Defendants contend that no such threats were made.

[2] Pastor Youngblood allegedly told the officers that he would close the school before he would allow the group to inspect private church property. Youngblood claims that Defendant Dobson responded that the pastor should go ahead and close the school.

[3] Florida Statutes section 381.0025(2) provides that "any person who interferes with, hinders, or opposes any employee of the [DOH] in the discharge of his or her duties . . . is guilty of a misdemeanor of the second degree."

part the motions of several Defendants to dismiss some of the claims in the complaint.[4] Later, the district court granted summary judgment in favor of all Defendants on each of Plaintiffs' remaining claims.[5] We review a district court's grant of summary judgment de novo and examine the facts in the light most favorable to the nonmoving party. Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1382 (11th Cir. 2005).

First, the district court correctly granted summary judgment on Plaintiffs' remaining claims for declaratory or injunctive relief. We agree with the district court that Plaintiffs lack Article III standing to receive prospective relief because

---

[4]The district court dismissed Plaintiffs' claims under the Florida Constitution to the extent they sought monetary damages because Plaintiffs cited no authority -- similar to 42 U.S.C. § 1983 in the federal context -- creating a civil cause of action for monetary relief under the Florida Constitution. See Resha v. Tucker, 670 So. 2d 56, 58-59 (Fla. 1996). Also, the district court concluded that the Eleventh Amendment bars Plaintiffs' claims for monetary damages against the DOH and the state inspectors in their official capacities. Cross v. Alabama, 49 F.3d 1490, 1503 (11th Cir. 1995). But, the district court did not dismiss most of Plaintiffs' claims to the extent they sought declaratory and injunctive relief. The district court did dismiss Plaintiffs' claim for negligent supervision and retention because Plaintiffs did not properly allege compliance with the presuit notice requirements of Florida Statutes section 768.28(6).

[5]The district court granted summary judgment on the remaining claims for monetary relief because either (1) Plaintiffs failed to establish the violation of a constitutional or statutory right; or (2) to the extent that Plaintiffs had shown a violation of federal constitutional rights by the DOH Inspectors and JSO Officers, the district court concluded these Defendants were entitled to qualified immunity because such rights were not clearly established. Plaintiffs' federal claims against the City failed because Plaintiffs failed to show the City had a policy or custom that violated their rights and because the JSO officers themselves committed no constitutional violation. On the remaining claims for declaratory and injunctive relief, the district court concluded that Plaintiffs lacked Article III standing to request such relief because Plaintiffs' failed to show the existence of a continuing justiciable controversy or a real and immediate threat.

the threat of future injury "remains conjectural, hypothetical, or contingent, and not real and immediate." Shotz v. Cates, 256 F.3d 1077, 1082 (11th Cir. 2001) (citation and quotation marks omitted).[6]

Next, Plaintiffs claim that Defendants violated Plaintiffs' free exercise rights under the state and federal constitutions and under the Florida Religious Freedom Restoration Act ("FRFRA"). Plaintiffs assert that Defendants' acts forced Plaintiffs "to either forfeit their ministry or submit to the unconstitutional warrantless searches of private property." We agree with the district court that Plaintiffs have alleged insufficient facts to show how Defendants' acts violated Plaintiffs' right to free exercise of religion. An attempt by state and local officials to enforce a neutral and generally applicable law or regulatory structure is no violation of the Free Exercise Clause. Warner v. City of Boca Raton, 420 F.3d 1308, 1310 (11th Cir. 2005). Also, although FRFRA requires that courts apply strict scrutiny to a Florida law that substantially burdens the free exercise of religion, Fla. Stat. §§ 761.03 (2003), Plaintiffs have failed to demonstrate how

---

[6]While none of the Defendant DOH inspectors have returned to the property, the DOH has conducted several inspections of the property without incident since 2001. Also, no state policy allows inspection of private church facilities, and Plaintiffs have alleged no facts to demonstrate a real or immediate threat that the DOH or other government officers will perform such inspections.

Defendants' acts constituted a "substantial burden" on Plaintiffs' free exercise of religion.[7]

Plaintiffs also allege that Defendants engaged in arbitrary discrimination in violation of Plaintiffs' right to equal protection. But, Plaintiffs have produced no evidence that Defendants carry out inspections of other similarly situated private schools in a less burdensome manner or that Defendants selectively enforced a facially neutral regulatory scheme for the purpose of discriminating against Plaintiffs. See Campbell v. Rainbow City, 434 F.3d 1306, 1313-14 (11th Cir. 2006). We therefore affirm the district court's grant of summary judgment on Plaintiffs' equal protection claims.

Next, Plaintiffs claim that Defendants violated their due process rights by arbitrarily issuing Pastor Youngblood a Notice to Appear for his refusal to allow the inspection of the property. Although Plaintiffs do not label their claim as a violation of either procedural or substantive due process, we conclude that Plaintiffs experienced neither kind of due process violation. Plaintiffs have failed to demonstrate how Defendants' acts deprived Plaintiffs of a constitutionally

---

[7]Plaintiffs assert that Defendants' acts imposed a substantial burden because Plaintiffs would have had to close the church and school to be free from unlawful entry onto their private property. Plaintiffs, however, have failed to allege facts that would demonstrate that Defendants' entry onto private property and subsequent activities thereon were unlawful. Also, a simple allegation that Plaintiffs are "considering" closing their facilities is, by itself, insufficient to rise to the level of a substantial burden on the free exercise of religion.

7

protected liberty or property interest without an adequate process.  See Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003).  Also, Defendants' acts -- even as alleged by Plaintiffs -- do not "rise to the level of a substantive due process violation" because they cannot "be characterized as arbitrary or conscience shocking in a constitutional sense."  Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003).

Plaintiffs further allege that Defendants engaged in an unlawful search and seizure by attempting to search private property without a warrant and thereafter issuing Youngblood a Notice to Appear.[8]  To establish a Fourth Amendment violation, a plaintiff first must demonstrate the occurrence of "a search and seizure of that individual's person, house, papers or effects, conducted by an agent of the government."  United States v. Bachner, 706 F.2d 1121, 1125 (11th Cir. 1983).  Here, Defendants' acts constituted neither a search nor a seizure.[9]  Youngblood admitted that JSO officers and DOH inspectors did not search or seize anything on 16 May 2001.  We do not accept Plaintiffs' claim that issuing a Notice to Appear

---

[8]Plaintiffs privacy claim under the Florida Constitution -- which is essentially a restatement of its search and seizure claim -- lacks merit because Plaintiffs have failed to show how Defendants' acts infringed on a legitimate expectation of privacy.

[9]Recognizing that administrative searches are subject to the warrant requirement, the district court determined Defendants' acts amounted to a constitutional violation but did not violate a clearly established right.  Because no search or seizure occurred, we conclude that Defendants did not violate the Fourth Amendment.

to Youngblood was, in effect, an arrest. A person is "seized" for Fourth Amendment purposes only if "a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 100 S. Ct. 1870, 1877 (1980). Here, JSO officers merely issued a Notice to Appear, which did not "seize" Youngblood, but required him to appear in court at a later date.[10] Because the facts -- even as alleged by Plaintiffs -- do not show the occurrence of any search or seizure by Defendants, the district court properly granted Defendants' motion for summary judgment on Plaintiffs' unlawful search and seizure claims.

The district court also properly granted summary judgment on Plaintiffs' civil conspiracy claim. Plaintiffs have failed to prove the threshold element of this claim: the existence of an underlying constitutional violation. GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998). Also, Plaintiffs have presented no particularized allegations that Defendants reached an understanding to violate Plaintiffs' rights. Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002). That DOH employees coordinated with JSO officers about meeting at the property to conduct an inspection is insufficient to show a conspiracy. Plaintiffs claim of civil conspiracy, therefore, fails.

---

[10]We have rejected the theory of "continuing seizure" in situations such as this where the only restraint on a person is the requirement to appear in court to answer the state's charges. Kingsland v. City of Miami, 382 F.3d 1220, 1235-36 (11th Cir. 2004).

The district court's grant of summary judgment in favor of Defendants is affirmed.[11]

AFFIRMED.

---

[11]Where we have concluded that no constitutional violation occurred at all, we would, in the alternative, uphold the grant to individuals of qualified immunity if we are mistaken on the violation issue.