[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10296
_____

D.C. Docket No. 9:13-cv-80990-WPD

KAWA ORTHODONTICS, LLP,

Plaintiff – Appellant,

versus

SECRETARY, U.S. DEPARTMENT OF THE TREASURY,
U.S. DEPARTMENT OF TREASURY,
COMMISSIONER OF THE INTERNAL REVENUE SERVICE,
INTERNAL REVENUE SERVICE,

Defendants – Appellees.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 2, 2014)

Before MARTIN, JULIE CARNES and BLACK, Circuit Judges.

BLACK, Circuit Judge:

## I.  BACKGROUND

The "employer mandate" provisions of the Patient Protection and Affordable Care Act (ACA) require certain employers to offer their employees health insurance that meets statutorily-specified minimum requirements.  The ACA imposes reporting obligations on those employers and provides for the assessment of a tax penalty if an employer fails to provide adequate insurance.

Between early 2013 and the end of June 2013, Kawa Orthodontics, LLP (Kawa) expended time and money to determine how to comply with the employer mandate.  After Kawa incurred these expenses, on July 2, 2013, the U.S. Department of the Treasury (Treasury) announced it would not enforce the mandate for a transition period of one year—until the end of 2014.  Treasury later extended the transition relief for certain employers, including Kawa, for a second year.

In October 2013, Kawa filed a complaint in federal district court challenging Treasury's decision to postpone enforcement of the employer mandate.  Kawa did not seek the return of the money that Kawa paid to research its upcoming obligations under the ACA.  Nor did it seek the return of any money attributable to the monetary value of the time that Kawa spent in this endeavor.  Rather, Kawa sought a declaratory judgment and an injunction setting aside Treasury's transition

2

relief. The district court dismissed the complaint, finding that Kawa lacked Article III standing. Kawa appeals.

## II.  STANDARD OF REVIEW

Whether a party has Article III standing is a jurisdictional issue, and therefore must be addressed before we may reach the merits. *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771, 120 S. Ct. 1858, 1861 (2000); *see also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) ("Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." (brackets and quotation omitted)). We review de novo whether plaintiffs have Article III standing. *Ga. Latino Alliance for Human Rights v. Governor of Georgia*, 691 F.3d 1250, 1257 (11th Cir. 2012). In assessing standing on a motion to dismiss, we presume the plaintiff's "general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, we "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206 (1975). We may affirm for any reason supported by the record, even if not relied upon by the district court. *United States v. Al-Arian*, 514 F.3d 1184, 1189 (11th Cir. 2008).

3

### III.  DISCUSSION

To establish Article III standing, a plaintiff must show "(1) an injury in fact that is concrete, particularized, and either actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable judicial decision will redress the injury."  *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1145 (11th Cir. 2014).  Applying this test, we conclude Kawa lacks Article III standing to challenge Treasury's delay of the mandate.[1]  We address each element in turn.

*A.  Injury*

In its complaint Kawa alleges Treasury's delay in enforcing the employer mandate injured it because the delay caused Kawa to "lose some, if not all, of the value of the time and resources it expended in 2013 in anticipation of the mandate going into effect on January 1, 2014."  Kawa alleges it would not have spent its time and money researching the ACA in 2013 had it known the mandate would be delayed until 2015, "but instead would have spent its time, resources, and money on other priorities."

---

[1] Because we conclude Kawa lacks Article III standing, we need not address whether Treasury's decision to postpone enforcement of the employer mandate is unreviewable under § 701(a)(2) of the Administrative Procedure Act (the APA), which precludes judicial review of an agency's action if the "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).

4

To satisfy the injury requirement, Kawa must show "an invasion of a legally protected interest that is sufficiently concrete and particularized rather than abstract and indefinite." *Ga. State Conference of NAACP Branches v. Cox*, 183 F.3d 1259, 1262 (11th Cir. 1999). "The interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right." *Vt. Agency of Natural Res.*, 529 U.S. at 772, 120 S. Ct. at 1862.

The allegations in Kawa's complaint do not state such a concrete and particularized injury. Although Kawa asserts it would have waited to research its ACA obligations, Kawa has not alleged that its ACA research is objectively worth less, or that Kawa has been actually harmed in a concrete way. *See GrassRoots Recycling Network, Inc. v. E.P.A.*, 429 F.3d 1109, 1112 (D.C. Cir. 2005) (holding a plaintiff failed to show an actual injury to challenge an EPA rule when the plaintiff alleged he "would not have purchased" a piece of property or "would have paid . . . less" because the plaintiff's allegations showed only that the property was "worth less to him," not that the property was "in fact worth less"). Therefore, as set out in its complaint, Kawa's bare allegation that it has lost the "value of the time and resources it expended in 2013" sets out an injury that is too abstract and indefinite to confer Article III standing, particularly because the substantive requirements for complying with the employer mandate remain unchanged and Kawa is still subject to them.

5

The dissent characterizes Kawa's alleged injury as the "lost two years of interest" Kawa could have accrued on the money spent in 2013 to comply with the employer mandate. However, as this appeal comes to us on a motion to dismiss, we must evaluate Kawa's standing "based on the facts alleged in the complaint." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). We may not hypothesize or speculate about the existence of an injury Kawa did not assert. *Id.* ("[W]e may not speculate concerning the existence of standing or piece together support for the plaintiff." (quotation omitted)). Kawa's complaint does not mention the word "interest," let alone allege that Kawa had specific plans to invest its money into an interest-bearing asset.[2] Therefore, Kawa's lost-interest argument is waived. *See Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009) ("[A]bsent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal.").

In short, Kawa's complaint alleges only a subjective perception that Treasury's delay caused it harm, which is insufficient to establish Article III standing.[3]

---

[2] Kawa's response to the motion to dismiss also makes no mention of lost interest. It was not until its initial brief before this Court that Kawa made a one-sentence passing reference to lost interest, stating only that "[a]t a minimum, Kawa Ortho could have saved its money and accrued interest on it rather than spending it on compliance with a mandate that never took effect." Appellant Br. 16.

[3] Even if Kawa's complaint had alleged lost interest revenue as its injury, that would not confer standing on it to challenge Treasury's delay. First, as explained in our discussion of

6

*B. Causation*

Even if Kawa had established a concrete and particularized injury, Kawa's claim of standing fails on the causation requirement.

To establish causation, Kawa must demonstrate its alleged injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136 (quotation and alterations omitted). Kawa alleges its injury was caused by Treasury's delay of the mandate. Kawa has not demonstrated its purported injury is fairly traceable to Treasury's delay. Any injuries associated with the timing of Kawa's compliance expenses, including any opportunity costs, are attributable to the ACA itself. *Cf. Arcia v. Fla Sec'y of State*, No. 12-15738, 2014 WL 6235917, at *4 (11th Cir. Nov. 17, 2014) (plaintiffs who incurred costs because of Florida's voter-removal program had standing to challenge that particular program); *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 456-57 (7th Cir. 2010) (plaintiff who incurred costs because of an order requiring it to post a bond had standing to challenge bond order). Treasury played no role in determining when or how Kawa allocated its resources in preparation for the

---

causation, it was the ACA itself, not Treasury's delay, which caused Kawa to spend money on legal research in 2013 and thereby forego the opportunity to earn interest on whatever money it spent. Second, as explained in our discussion of redressability, the only remedy that could restore Kawa's lost interest is money, which Kawa does not seek.

7

employer mandate and reporting requirements of the ACA.  Therefore, Kawa cannot show causation.[4]

## C.  Redressability

Even if Kawa had met both the injury and causation requirements to establish standing, it cannot meet the redressability requirement.  This is so because Kawa does not—and cannot[5]—seek money damages in this case, and money damages are the only relief that could redress Kawa's alleged injury.  Kawa nevertheless requests a declaratory judgment that Treasury's transition relief violates the Administrative Procedure Act and an injunction prohibiting and setting aside the transition relief.  Kawa argues an injunction would reinstate the original January 1, 2014, effective date of the mandate, and Kawa would thereby regain some or all of the value of its 2013 expenditures.

To establish redressability, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561, 112 S. Ct. at 2136 (quotation omitted).  In this case, granting the requested declaratory and injunctive relief would not redress Kawa's purported injury.  Kawa would not recoup its compliance expenses or any value associated with the time and resources Kawa expended in 2013.  The consequence of granting

---

[4] The dissent does not cite any authority for its view that Kawa's alleged injury is fairly traceable to Treasury's actions, but instead relies only on its characterization of Kawa's injury.

[5] Damages are not available under the Administrative Procedure Act in this action.  *See* 5 U.S.C. § 702 (authorizing actions seeking "relief other than money damages").

the requested relief would be to simply subject Kawa and other employers to the employer mandate tax penalties and reporting requirements.  Kawa has not explained how Treasury's enforcement of tax penalties and reporting requirements would put Kawa in any different position than Kawa is currently in now, or how the requested relief will or could increase the value of the resources Kawa expended.  *See DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1303 (11th Cir. 2008) (explaining a plaintiff lacked standing where the complaint did not "suggest in any way how [the] 'injury' could be redressed by a favorable judgment").  Therefore, Kawa has not shown redressability.[6]

## IV.  CONCLUSION

For the foregoing reasons, we conclude Kawa lacks Article III standing.

**AFFIRMED.**

---

[6] The dissent argues that an injunction "would end the continued injury Kawa faces from each new day of unearned interest on the money" Kawa spent on compliance in 2013.  But nothing short of monetary compensation that may be invested in an interest-bearing account could stop Kawa from continuing to lose the potential interest revenue Kawa gave up in 2013 when it paid for ACA research.  As explained, Kawa does not seek and cannot obtain monetary damages.  And neither a declaratory judgment nor an injunction could restore to Kawa its alleged loss of time and value.

MARTIN, Circuit Judge, dissenting:

Kawa Orthodontics, LLP (Kawa) filed suit in federal court challenging the Treasury Department's decision to delay enforcement of the "employer mandate" provisions of the Patient Protection and Affordable Care Act (ACA). Before us is the narrow question of whether Kawa has Article III standing to challenge that delay. Because I believe that Kawa has standing, I respectfully dissent.

I.

The ACA requires employers with more than fifty full-time employees to provide minimum essential health-insurance coverage to its employees and their dependents or pay a tax penalty. 26 U.S.C. § 4980H. According to the statute, these provisions (known as the "employer mandate") were scheduled to take effect on January 1, 2014. Pub. L. No. 111-148, § 1513(d), 124 Stat. 119, 256. However, on July 2, 2013, the Treasury Department announced a one-year delay in enforcement of the employer mandate. See IRS Notice 2013-45, Transition Relief for 2014 Under §§ 6055 (§ 6055 Information Reporting), 6056 (§ 6056 Information Reporting) and 4980H (Employer Shared Responsibility Provisions), IRB 2013-31, July 29, 2013, available at http://www.irs.gov/irb/2013-31_IRB/ar08.html. That delay has since been extended until the end of 2015 for employers with between fifty and ninety-nine employees. See 79 Fed. Reg. 8544 (Feb. 12, 2014).

In October 2013, Kawa filed suit in federal district court challenging Treasury's delay in enforcing the employer mandate.  Kawa has more than fifty full-time employees and would therefore be subject to the provision.  According to the complaint, prior to the announcement of delayed enforcement, Kawa incurred certain costs "including money spent on legal fees . . . in order to determine what options and obligations it ha[d] under the 'employer mandate' and how the coverage Plaintiff [then] offer[ed] to its employees w[ould] be affected by the mandate."  Kawa alleged that had it known the employer mandate would not be enforced until well after January 1, 2014, it "would not have expended its time and resources and incurred these anticipatory costs in 2013 . . . but instead would have spent its time, resources, and money on other priorities."  In short, Kawa alleged injury because it "los[t] some, if not all, of the value of the time and resources it expended in 2013 in anticipation of the mandate going into effect on January 1, 2014."  Kawa sought declaratory and injunctive relief under the Administrative Procedure Act (APA) setting aside the delay of the employer mandate.  On January 13, 2014, the District Court dismissed Kawa's suit for lack of subject-matter jurisdiction, holding that Kawa lacked Article III standing.  Kawa appeals that holding here.

11

II.

In order to show standing, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324 (1984), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., __ U.S. __, 134 S. Ct. 1377 (2014). The "party invoking federal jurisdiction bears the burden of establishing these elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992). "We review issues of standing de novo." Hollywood Mobile Estates, Ltd. v. Seminole Tribe of Fla., 641 F.3d 1259, 1264 (11th Cir. 2011). After careful consideration, I believe that Kawa has alleged facts sufficient to meet each part of the three-pronged standing test.

A.

First, Kawa has shown that it has sustained an injury as a result of the government's decision to delay enforcement of the employer mandate. It spent money on compliance costs two years earlier than necessary, and therefore lost two years of interest on those expenditures. Under basic rules of accounting, "[a] dollar today is worth more than a dollar tomorrow." Atlanta Mut. Ins. Co. v. Comm'r, 523 U.S. 382, 384, 118 S. Ct. 1413, 1415 (1998) (quoting D. Herwitz & M. Barrett, Accounting for Lawyers 221 (2d ed. 1997)); see also Till v. SCS Credit

12

Corp., 541 U.S. 465, 487, 124 S. Ct. 1951, 1966 (2004) (Thomas, J., concurring in the judgment) ("$4,000 today is worth more than $4,000 to be received 17 months from today because if received today, the $4,000 can be invested to start earning interest immediately." (footnote omitted)).  This is the "time value of money."  See Habitat Educ. Ctr. v. U.S. Forest Serv., 607 F.3d 453, 459 (7th Cir. 2010).  Here, had Kawa spent money to ensure its compliance with the employer mandate in 2015 instead of 2013, it could have earned an additional two years of interest on that money.  Or, instead of earning interest, Kawa could have invested that money in other endeavors to generate two years' worth of added profits to the company. Cf. Arcia v. Florida Sec'y of State, 746 F.3d 1273, 1279 (11th Cir. 2014) ("Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response.").[1]

This loss of the time value of Kawa's money is a sufficient injury to meet the requirements of Article III standing.  Recently, in Habitat Education Center, the Seventh Circuit addressed a similar question and held that the plaintiff had standing to challenge a deposit of $10,000 with the court, even though it was

---

[1] The owner of Kawa, Larry Kawa, also said in his declaration that he "spent approximately 100 hours researching and familiarizing [him]self with the ACA and the 'employer mandate.'"  "Had [he] not spent [his] time researching the ACA and the 'employer mandate' and seeking and obtaining professional advice on how best to comply with the mandate, [he] would have spent this same time generating new patient referrals for Kawa Ortho."

13

possible the plaintiff would eventually receive the full amount of money back if it

won the case.  Id. at 457.  The Seventh Circuit reasoned:

> It could be argued that unless and until damages are assessed, Habitat
> has incurred no loss and therefore lacks standing to appeal.  But it has
> incurred a loss—a loss of the use of $10,000.  Every day that a sum of
> money is wrongfully withheld, its rightful owner loses the time value
> of the money.  Suppose no damages are ever assessed against Habitat
> and so eventually the court returns the $10,000 that it is holding; there
> would be no procedural vehicle to enable Habitat to recover the loss
> of the time value of its money.  Therefore it had standing to challenge
> the bond order on appeal from the final judgment.

Id.

The very same can be said here.  Kawa alleged that it "spent [money] on

legal fees . . . in order to determine what options and obligations it ha[d] under the

[ACA]."  And by paying lawyers to ensure that its health insurance program

complied with the ACA in 2013 rather than 2015, Kawa lost two years of interest

on those expenditures.  Given that the Supreme Court has found an injury as small

as "a $5 fine and costs" and a "$1.50 poll tax" sufficient to show standing, United

States v. SCRAP, 412 U.S. 669, 689 n.14, 93 S. Ct. 2405, 2417 (1973), I

understand the lost interest on thousands of dollars of legal payments that were

prematurely spent to meet the injury prong of standing.  See also F. Andrew

Hessick, Probabilistic Standing, 106 Nw. U. L. Rev. 55, 67–68 (2012) ("[S]tanding

treats identically a plaintiff who alleges only 1¢ in harm and a plaintiff who alleges

14

a $100,000 injury; both have a personal stake warranting invocation of the courts.").

Of course, I agree that the information Kawa obtained as a result of its legal expenditures will also be valuable in 2015 when the employer mandate goes into effect. However, looking only to the utility of Kawa's legal expenditures ignores the fact that Kawa could have obtained that information two years later, and benefited from the use of interest earned on that money had it known of the delay. Monetary loss—no matter how small—has been recognized as a cognizable injury for standing purposes. I would hold that Kawa has alleged facts that show an injury sufficient to demonstrate Article III standing.

## B.

Second, Kawa has shown that its "injury [is] fairly traceable to the defendant's allegedly unlawful conduct," Allen, 468 U.S. at 751, 104 S. Ct. at 3324. The government argues that Kawa's asserted injury "did not result from the actions of the defendants in this case," but rather "from the enactment of the statute itself." Were the alleged injury the fact that Kawa spent the money on compliance costs at all, the government would be correct that the statutory mandate—not the delay—brought about the need to make such expenditures. But since the injury is the lost time value of Kawa's expenditures, not the expenditures themselves, the

15

only reason for that loss is the delay in enforcement.  I would hold that Kawa has alleged causation sufficient to demonstrate Article III standing.

## C.

Third, Kawa has shown that its injury is "likely to be redressed by the requested relief."  Allen, 468 U.S. at 751, 104 S. Ct. at 3324.  When determining redressibility, we simply inquire as to whether the plaintiff has shown that it would gain some relief in the event of a favorable ruling.  See Hollywood Mobile Estates, 641 F.3d at 1266.

Here, Kawa sought relief under the APA for injunctive and declaratory relief—not monetary damages.  I agree with the District Court that "[n]either a declaration that Defendants acted unlawfully nor an injunction requiring the immediate implementation of the employer mandate would compensate Plaintiff for its time and resources expended in 2013."  However, compensation is not the only means of redress.  Kawa may not be able to obtain redress for the interest it has lost between January 1, 2014, and now.  But if a court required the government to enforce the employer mandate going forward, that decision would end the continued injury Kawa faces from each new day of unearned interest on the money it prematurely used for those legal expenditures.  In other words, it would not have unnecessarily spent the money before it needed to.  For this reason, I would hold that Kawa has met the redressibility prong for Article III standing.

16

III.

The majority says that because "Kawa's complaint does not mention the word 'interest,' let alone allege that Kawa had specific plans to invest its money into an interest-bearing asset . . . [its] lost-interest argument is waived."  But I am mindful that "[w]hen the defendant challenges standing via a motion to dismiss, both trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993) (quotation marks omitted).  We may find standing "based on the facts alleged in the complaint."  Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (emphasis added).  The plaintiffs' complaint here clearly says that "Plaintiff would not have expended its time and resources and incurred these anticipatory costs in 2013 if the mandate had not been schedule to take effect until 2015, but instead would have spent its time, resources, and money on other priorities."  The complaint also states that the delay in enforcement of the "employer mandate" has "caus[ed] Plaintiff to lose some . . . of the value of the time and resources it expended in 2013."  Applying the well-known principle of "the time value of money" means that spending money on other priorities in 2013—and reaping the benefits of those investments between 2013 and 2015—would financially benefit Kawa even if it eventually expends money in 2015 to comply with the mandate.

17

Construing Kawa's complaint liberally, I understand Kawa to have easily alleged facts sufficient to demonstrate Article III standing in its complaint.[2]

Of course, my view on the issue of standing has nothing to do with the merits of Kawa's complaint challenging the employer mandate's delayed enforcement under the APA.  In fact, any discussion of the merits here would be inappropriate.  See, e.g., Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1294 (11th Cir. 2010) (holding, after we found standing following a district court's dismissal for lack of subject matter jurisdiction, that "[t]he merits will be for the district court to decide on remand").  However, I would hold that Kawa has alleged facts that demonstrate it has met the requirements of Article III standing, and would remand and allow the District Court to address the merits of Kawa's claims. I therefore respectfully dissent.

---

[2] I agree with the majority's suggestion that Kawa has poorly explained how expending funds in 2013 rather than in 2015 would injure it.  However, a party's deficient enunciation of a legal argument does not strip us of our duty to view the complaint in the light most favorable to the plaintiff and determine whether it has alleged facts sufficient to show standing.  See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990) ("Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." (quotation marks omitted)).