[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13025

_____

WILLIAM SWEET,
KOSTANTINOS FOTOPOLOUS,
GLEN ROGERS,

Plaintiffs-Appellants,

*versus*

CHIEF JUSTICE OF FLORIDA SUPREME COURT,
in his official capacity,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

2                    Opinion of the Court                    23-13025

D.C. Docket No. 3:22-cv-00574-TJC-LLL

_____

Before BRANCH, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Florida law allows "[t]he Justice Administrative Commission, the Department of Legal Affairs, or any interested person" to "advise the court of any circumstance that could affect the quality of representation" of death-row inmates by their appointed capital collateral regional counsel. Fla. Stat. § 27.711(12). Treating this law as a state-created right to advise the Florida Supreme Court about the quality of their capital collateral regional counsel, three death-row inmates brought this 42 U.S.C. section 1983 action against the Chief Justice, in his official capacity, alleging that his court's rules and policies prohibiting them from filing pro se pleadings violated the procedural component of the Due Process Clause. The district court granted the Chief Justice's motion to dismiss the inmates' procedural due process claim for lack of jurisdiction. After careful review, and with the benefit of oral argument, we affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

*Florida's Capital Collateral Regional Counsel Statutes*

To understand the inmates' procedural due process claim, it is helpful first to discuss the Florida statutes creating the capital collateral regional counsel position. The Florida legislature created the capital collateral regional counsel position "to provide for the collateral representation of any person convicted and sentenced to

death in this state, so that collateral legal proceedings to challenge any Florida capital conviction and sentence may be commenced in a timely manner." Fla. Stat. § 27.7001.

But by providing collateral counsel to death-row inmates, the legislature explained that it was "not creat[ing] any right" for death-row inmates "to challenge in any form or manner the adequacy of the collateral representation provided." *Id.* § 27.7002(1). Instead, "[w]ith respect to counsel appointed to represent defendants in collateral proceedings . . . , the sole method of assuring adequacy of representation provided" would be "in accordance with the provisions of [section] 27.711(12)." *Id.* § 27.7002(2). This is what the provisions of section 27.711(12) say:

> The court shall monitor the performance of assigned counsel to ensure that the capital defendant is receiving quality representation. The court shall also receive and evaluate allegations that are made regarding the performance of assigned counsel. The Justice Administrative Commission, the Department of Legal Affairs, or any interested person may advise the court of any circumstance that could affect the quality of representation, including, but not limited to, false or fraudulent billing, misconduct, failure to meet continuing legal education requirements, solicitation to receive compensation from the capital defendant, or failure to file appropriate motions in a timely manner.

*Id.* § 27.711(12).

*The Inmates' Complaint*

William Sweet, Kostantinos Fotopolous, and Glen Rogers are death-row inmates in Florida.  They each have exhausted their direct appeals in state court and are "presently being represented" by capital collateral regional counsel.

Together, the inmates sued the Chief Justice in his official capacity and as the representative of his court.  They alleged that they have "attempted to raise issues regarding the failure of [their appointed counsel] to timely file appropriate motions and provide quality representation" by filing pleadings with the Florida Supreme Court.  For example, the inmates attached pro se pleadings filed by Sweet, Fotopoulos, and two nonparty death-row inmates that were either denied or transferred by the Florida Supreme Court.  The attached pro se pleadings advised the court that the inmates' capital collateral regional counsel failed to research and investigate valid postconviction claims, failed to file timely and appropriate motions, and failed to follow up on newly discovered evidence.  The inmates alleged that their advice about the quality of their representation has been systematically rejected because of the rules and policies of the Florida Supreme Court prohibiting death-row inmates from filing pro se pleadings.

The Florida Supreme Court's systematic rejection of their pleadings, the inmates alleged, violated their procedural due process rights to give advice as "interested person[s]" under section 27.711(12).  As relief, the inmates sought nominal damages, a declaratory judgment, an injunction, and a writ of mandamus.

In response, the Chief Justice moved to dismiss the inmates' complaint. The district court granted the dismissal motion because the inmates lacked jurisdiction to bring their procedural due process claim. This is the inmates' appeal of the dismissal.

## STANDARD OF REVIEW

"We review jurisdictional issues de novo." *English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023) (citation omitted).

## DISCUSSION

The Chief Justice raises two jurisdictional issues on appeal that we must discuss before reaching the merits of the inmates' procedural due process claim. *See In re Engle Cases*, 767 F.3d 1082, 1108 n.30 (11th Cir. 2014) ("Normally, we must address the jurisdictional issues in an appeal first because we cannot reach the merits until we are satisfied that we have jurisdiction to consider them."). We first address the inmates' standing to bring their claim. Then, we consider whether their claim is barred by sovereign immunity.

### *Standing*

"Article III of the United States Constitution limits the 'judicial Power'—and thus the jurisdiction of the federal courts—to 'Cases' and 'Controversies,'" and standing is an "essential" component "of the case-or-controversy requirement." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (en banc) (first quoting U.S. Const. art. III, § 2, then quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, the plaintiff has the

burden to show three elements:  (1) injury in fact; (2) traceability; and (3) redressability.  *Id.*  At the pleading stage, the complaint "must clearly allege facts demonstrating each element."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up).  When reviewing the allegations in the complaint for standing, "we must assume that on the merits the plaintiffs would be successful on their claims."  *Ctr. for a Sustainable Coast v. U.S. Army Corps of Eng'rs*, 100 F.4th 1349, 1355 (11th Cir. 2024) (quotation omitted).

We begin with the first element—injury in fact.  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).  An injury is "particularized" if it affects the plaintiff personally.  *Id*. (citation omitted).  And an injury is "concrete" if it "actually exist[s]."  *Id*. at 340 (citation omitted).  "[A]t the pleading stage, 'general factual allegations' showing these elements will suffice."  *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019) (quoting *Lujan*, 504 U.S. at 561).

Here, the inmates alleged that their procedural due process rights to advise the court about the quality of their representation by capital collateral regional counsel were violated by the Florida Supreme Court's rules and policies prohibiting their pro se pleadings.  But "standing is not dispensed in gross."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  The inmates must demonstrate standing—including an injury in fact—"for each form of relief that

they seek." *Id.* In their complaint, the inmates sought nominal damages for *past* violations of their procedural rights, and injunctive, declaratory, and mandamus relief for *future* violations. So we must determine whether the inmates have alleged a past injury in fact, and then whether they've alleged that they are likely to suffer a future injury.

### Whether the Inmates Have Alleged a Past Injury

In their complaint, the inmates alleged that they have been denied the procedural right to advise the court about the quality of their representation. But "a bare procedural violation, divorced from any concrete harm," does not create an injury in fact. *Spokeo*, 578 U.S. at 341. To show an injury for a violation of a procedural right, the inmates must allege that the violation was connected to a concrete harm. *Ctr. for a Sustainable Coast*, 100 F.4th at 1356 (citing *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1170 (11th Cir. 2006)). For example, the plaintiffs in *Center for a Sustainable Coast* established an injury in fact when they challenged an agency's failure to use a notice and comment process and "connect[ed] that procedural harm with the[] concrete injury" that their aesthetic interests were impacted by the deprivation of their procedural right. *Id.*

Here, as in *Center for a Sustainable Coast*, the inmates have alleged that the Florida Supreme Court violated their procedural right—to advise the court about the quality of their collateral counsel—by systematically rejecting their pro se pleadings. And they connected that procedural violation to a concrete harm that was personal to them. The inmates alleged that they wished to advise

the court about the fact that their collateral counsel did not "file a newly discovered claim in a timely manner," did not follow up on "newly discovered evidence," failed to argue "that trial counsel conceded . . . guilt to the jury," and did not "identify and file [a motion] that insufficient evidence exist[ed] to maintain . . . convictions."

The inmates have also met the other two standing elements—traceability and redressability. The alleged violation of the inmates' procedural rights was traceable to the Florida Supreme Court's rules and policies prohibiting their pro se pleadings. And the nominal damages they seek can redress the violation of the inmates' procedural due process rights, *see Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021) (holding that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right"), although the inmates have another jurisdictional problem with their nominal damages claim that we'll discuss below.

## Whether the Inmates Have Alleged a Future Injury

For standing for future relief, the inmates "must show that [they are] under threat of suffering injury in fact that is concrete and particularized" and "the threat must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quotation omitted). In other words, a plaintiff seeking prospective relief "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." *Houston*, 733 F.3d at 1328–29 (quoting *Wooden v. Bd. of Regents of*

*Univ. Sys. of Ga.*, 247 F.3d 1252, 1284 (11th Cir. 2001)); *see Elend v. Basham*, 471 F.3d 1199, 1207 (11th Cir. 2006) (applying the requirement of future harm to multiple forms of prospective relief).

Past wrongs may be evidence of the threat of future injury, "but past exposure to illegal conduct . . . unaccompanied by any continuing, present adverse effects" does not establish standing for future relief. *JW v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) (quotation omitted). "Where we have found a sufficient imminence of future harm based on a past injury, the plaintiff has alleged with particularity that a future injury would likely occur in substantially the same manner as the previous injury." *Elend*, 471 F.3d at 1208. The plaintiff must allege some "credible threat that the injury would be repeated imminently to justify declaratory or injunctive relief." *Id.*

Take *Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001), for example. There, we held that plaintiffs alleging past disability discrimination at a county courthouse did not have standing to seek future relief because they had not "alleged that they intend to [return to the courthouse] in the future." *Id.* at 1082. "Absent such an allegation, the likelihood of future discrimination remain[ed] 'conjectural, hypothetical, or contingent,' and not 'real and immediate.'" *Id.* (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985)).

Like in *Shotz*, the inmates have alleged a past violation—that they "attempted to raise issues" regarding the quality of their capital collateral regional counsel but have been "unable to raise these issues" because of the Florida Supreme Court's rules and policies.

The inmates attached their rejected pleadings as proof.  But missing from the complaint is any indication that the inmates will need to advise the court about the quality of their capital collateral regional counsel in the future or that they plan to advise the court about the quality of their appointed counsel in future pleadings.  Without allegations that the inmates are likely to face harm in the future, they have not alleged a credible threat of future injury, and, thus, do not have standing to seek future injunctive, declaratory, or mandamus relief.

### Sovereign Immunity

Although the inmates have standing to seek nominal damages for alleged past injuries, they face another jurisdictional barrier: sovereign immunity.  Absent waiver by the state or Congress, "Eleventh Amendment sovereign immunity prohibits federal courts from entertaining suits brought by citizens against a state, including its agencies and departments." *Uberoi v. Sup. Ct. of Fla.*, 819 F.3d 1311, 1313 (11th Cir. 2016) (citations and footnote omitted).  While sovereign immunity does not bar claims against state officials for injunctive or declaratory relief, *Kentucky v. Graham*, 473 U.S. 159, 169 n.18 (1985), "state officials sued for damages in their official capacity are immune from suit in federal court," *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) (citing *Graham*, 473 U.S. at 169).  Eleventh Amendment sovereign immunity is inherently jurisdictional.  *Dupree v. Owens*, 92 F.4th 999, 1007 (11th Cir. 2024) (citation omitted).

Here, the inmates sued the Chief Justice in his official capacity under section 1983. Because "the Florida Supreme Court is a department of the State of Florida," *Uberoi*, 819 F.3d at 1313–14 (citations omitted), the head of that department, the Chief Justice, is a state official entitled to sovereign immunity. Congress has not abrogated—and the state has not waived—sovereign immunity under section 1983. *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995) (citation omitted); *Hill v. Dep't of Corr., State of Fla.*, 513 So. 2d 129, 133 (Fla. 1987). So, absent state waiver or congressional abrogation, the inmates are jurisdictionally barred from seeking nominal damages for past relief under section 1983 against the Chief Justice in his official capacity as the head of the Florida Supreme Court.

## CONCLUSION

In the end, the federal courts lack jurisdiction to consider the inmates' procedural due process claim. The inmates lack standing to seek future relief, and the Chief Justice has sovereign immunity for damages for past relief. Thus, the district court did not err in dismissing the inmates' complaint for lack of jurisdiction.

**AFFIRMED**.