[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10648

_____

D.C. Docket No. 0:18-cv-62486-UU

PATRICIA KENNEDY,

Plaintiff-Appellant,

versus

FLORIDIAN HOTEL, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 27, 2021)

Before LAGOA, HULL and MARCUS, Circuit Judges.

HULL, Circuit Judge:

Patricia Kennedy ("Kennedy") appeals the district court's dismissal of her

complaint against Floridian Hotel, Inc. ("Floridian"), a hotel owner and operator.

Kennedy, who has a disability, alleged Floridian violated Title III of the Americans with Disabilities Act ("ADA") based on barriers to access she encountered at the hotel property (Count I) and deficiencies in its online reservation system (Count II). This is Kennedy's second ADA lawsuit against Floridian as to its online reservation system.

Early in this second lawsuit, the district court dismissed Count II for improper claim splitting, given that Kennedy had made a claim in her first lawsuit about Floridian's online reservation system. Later, after some discovery, the district court dismissed Count I with prejudice for lack of subject matter jurisdiction, concluding Kennedy did not have standing to seek injunctive relief. After careful review and with the benefit of oral argument, we affirm both dismissals by the district court, but remand for the sole purpose of the district court's revising the dismissal of Count I to be without prejudice.

## I. PRIOR LAWSUIT

In March 2018, Kennedy filed her first ADA action against Floridian (hereinafter Floridian I).[1] In her amended complaint in Floridian I, Kennedy alleged that Floridian's online reservation system, operated through the floridianhotel.com website, was not in compliance with the ADA and guidelines

---

[1] See Kennedy v. Floridian Hotel, Inc., No. 1:18-cv-20839-UU, ECF No. 1 (S.D. Fla. March 5, 2018).

covering hotel reservation systems in 28 C.F.R. § 36.302(e)(1), because it failed to indicate whether hotel guest rooms, common areas, and amenities were accessible to individuals with disabilities.[2]  Kennedy sought declaratory and injunctive relief as well as attorney's fees and costs.

In December 2018, the district court dismissed Floridian I for lack of jurisdiction.  The district court concluded Kennedy lacked standing to pursue injunctive relief under the ADA because she had failed to demonstrate a real and immediate threat of future injury.  Kennedy appealed the Floridian I dismissal order, but she later voluntarily dismissed her appeal.

## II.  INSTANT LAWSUIT

While the first lawsuit was pending, Kennedy filed the instant lawsuit in October 2018.  The record in the instant lawsuit includes Kennedy's 2018 deposition testimony from her prior action in Floridian I and her 2019 deposition testimony and her three declarations filed in this action.

### A.    Parties

Kennedy is an individual with a disability within the meaning of the ADA.

---

[2]These guidelines require places of lodging to: (1) ensure individuals with disabilities can make reservations for accessible rooms in the same manner as persons who do not need such rooms; (2) identify and describe accessible features so that individuals with disabilities can assess whether their accessibility needs are met; (3) ensure accessible guest rooms are held for use by individuals with disabilities until all other guest rooms are full; (4) reserve accessible guest rooms upon request; and (5) guarantee that an accessible guest room that has been reserved is held for the reserving customer.  28 C.F.R. § 36.302(e)(1).

3

As the result of a spinal injury, she cannot walk more than a few steps or stand without assistance. She must use a wheelchair, cane, or other support. Kennedy is an ADA advocate and a "tester" who visits places of public accommodation to monitor their compliance with the ADA. The district court took judicial notice of her filing more than 250 ADA cases in the Southern District of Florida since this lawsuit was filed in October 2018.

Floridian owns and operates the Floridian Hotel (the "Hotel") in Homestead, Florida, which is a place of public accommodation under the ADA. Through its website, floridianhotel.com, and third-party websites, Floridian operates an online reservation system ("ORS") that allows individuals to book rooms and obtain information about the Hotel. Kennedy resides in Tamarac, Florida, which is about 50 to 60 miles from the Hotel.

## B.    Hotel and Website Visits

Prior to filing Floridian I, Kennedy visited Floridian's website because she "needed to go down to Miami" to visit a friend "in the Keys" and was searching for a place to stay. At her deposition in Floridian I, she could not recall the friend's name or when she was planning to visit, and she could not provide his exact location. Kennedy cancelled the trip and did not make firm plans to reschedule it.

On October 8–9, 2018—just before filing this lawsuit—Kennedy visited the

4

Hotel in person for the first time. Kennedy spent approximately two to three hours at the Hotel. Kennedy testified that she visited the Hotel because it was in Homestead, and that she had been trying to go to the Redlands Blues and Barbecue Festival (the "blues festival") in Homestead—which is held in April—for several years. When asked why she visited the Hotel in October if the blues festival was in April, Kennedy testified she did not recall.

On October 11, 2018, Kennedy attempted to make an online reservation at the Hotel for April 6–7, 2019. She was unable to do so and called the Hotel, which advised her that she could not book a room online that far in advance. Kennedy acknowledges that this October reservation attempt was not connected to her decision to attend the blues festival.

## C.    Blues Festival and Travel to Homestead

Kennedy never purchased tickets for the 2019 blues festival and could not remember when she first heard of it or exactly where it was held. Kennedy did not attend the 2019 blues festival due to illness. Kennedy testified that she intended to go back to the Hotel "[f]or that Blues and Barbecue thing for sure" and wanted to go in 2020, but it would depend on how she was feeling.

As of September 2018, Kennedy had not stayed at any hotel in Homestead within the past year and was unsure if she had ever stayed before at a hotel in Homestead. In her 2019 deposition, Kennedy testified that: (1) she did not visit

5

Homestead often because it was "a ways" from her home; (2) she had not returned to the Hotel or the Homestead area since October 2018; and (3) since filing Floridian I, she had never visited her friend in the Keys, whose name she could still not remember.

In a declaration, however, Kennedy stated that she "frequently travel[s] throughout Florida including Miami-Dade County and Homestead," and that she has "been to Homestead approximately 100 times." She also stated that when she travels any distance she will "normally spend the night in local hotels."

**D.    Hotel and Website Revisits as ADA Tester**

At her deposition in this lawsuit, Kennedy testified that she keeps a list on her computer of all lawsuits in the Southern District of Florida that she has been involved in, and that the list includes an approximation of when she returned to each subject property or website. She knows to go back and check websites based on settlement agreements stored on her computer, but she has no calendar system in place reminding her to revisit. She will revisit a property when she "need[s] to."

In her declarations, Kennedy stated that as an ADA tester, she will "subsequently revisit each property or website to ascertain whether the ADA violations have been fixed." In her third declaration, Kennedy further explained that in 2019, she implemented an improved system for tracking her cases, which included the case name and number, the "name and address of the property, [the]

6

date the suit was commenced and closed," and the fact of her return. Under this system, Kennedy stated, she was confident of her ability to ensure she returns "to absolutely every property" she sues. Also in her third declaration, Kennedy stated that although visiting the Hotel would be a futile gesture unless she was willing to suffer discrimination again, she nevertheless was planning to do so. "I will be revisiting the hotel in the near future because I said I would and because I have a system in place that ensures I will," she stated.

### III.  PROCEDURAL HISTORY

#### A.    Complaint

On October 17, 2018, Kennedy filed the current two-count complaint, seeking declaratory and injunctive relief. In Count I, she alleged Floridian violated the ADA, 42 U.S.C. §§ 12182 and 12183, based on barriers to access she encountered at the Hotel. She alleged Floridian failed to make the Hotel property accessible to individuals with disabilities by, inter alia, failing to provide sufficient accessible parking spaces, an accessible route from disabled parking spaces to the Hotel, sufficient accessible guest rooms, and a pool lift. Kennedy alleged that she planned to return to the Hotel within eight months.

In Count II, Kennedy again challenged Floridian's ORS under the ADA and 28 C.F.R. § 36.302(e)(1). She alleged that Floridian's ORS through floridianhotel.com failed to identify accessible guest rooms or provide information

about accessible features at the Hotel, and additionally, did not allow for the booking of accessible rooms. Kennedy further alleged that Floridian's ORS, operated through third-party websites such as expedia.com and kayak.com, also did not comply with the ADA. Some of these third-party websites failed to identify accessible guest rooms or allow for their booking. While other websites claimed certain guest rooms were accessible, they omitted information about non-compliant features of the rooms, other barriers to access at the Hotel—such as a step blocking pool access—and the accessibility of amenities at the Hotel.

In subsequent declarations, Kennedy stated that Floridian "revised" its own website sometime after Floridian I was filed and "made various claims of accessibility" that were false and misleading. Kennedy reviewed the ORS several times but does not state when she did so. She attempted to reserve a room only on October 11, 2018, but does not state what website she used. Her complaint and declarations do not indicate when she first encountered the allegedly deficient information on floridianhotel.com or the third-party websites. Kennedy alleged that she planned to revisit Floridian's websites in the "near future" to test them for ADA compliance or reserve a guest room, but again does not specify which ones.

## B.    Motion to Dismiss

In November 2018, while Floridian I was still pending, Floridian moved to dismiss the instant complaint for failure to state a claim and on various other

8

grounds. On April 3, 2019—several months after <u>Floridian I</u> was dismissed for lack of standing—the district court granted in part and denied in part Floridian's motion to dismiss this second case.

Relevant here, the court dismissed Count II (the ORS claim) with prejudice for improper claim splitting because it: (1) involved the same parties as <u>Floridian I</u>, and (2) arose from the same nucleus of operative facts.

The court dismissed a portion of Count I for failure to state claim but otherwise denied Floridian's motion to dismiss the barriers-to-access claim in Count I.

## C.    Subsequent Motions as to Count I

As to the remaining parts of the barriers-to-access claim in Count I, the parties filed cross-motions for summary judgment. Floridian focused solely on Kennedy's standing to pursue injunctive relief, arguing that she failed to demonstrate a real and immediate threat of future injury.

The district court construed Floridian's summary judgment motion as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The court determined that Floridian's standing challenge was "purely jurisdictional" and separate from the merits of Kennedy's ADA claims. The court therefore applied the Rule 12(b)(1) standard governing factual attacks on jurisdiction, which allows courts to weigh independently the evidence.

9

Further, the court determined it was not required to hold a hearing because, among other reasons, the record was well developed.

As to Kennedy's standing to pursue injunctive relief in Count I, the court examined the totality of the circumstances and the four factors set forth in Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1337 n.6 (11th Cir. 2013), to determine whether Kennedy had shown a real and immediate threat of future injury. The court focused its analysis on the third factor—the definiteness of Kennedy's plan to return to Floridian's Hotel in Homestead.

First, the district court declined to credit Kennedy's claims that she intends to stay at the Hotel in the future when she: (1) visits her unidentified friend in the Keys, or (2) attends the blues festival. The court noted that Kennedy had never attended or purchased tickets for the festival and had expressed only a "some day" intention to attend. The court recognized that Kennedy's status as an ADA tester could support her intent to return to Floridian's Hotel. But it concluded that she had not provided "any adequate assurance of immediate revisitation," notwithstanding her system for tracking cases.

Because Kennedy failed to demonstrate a real and immediate threat of future injury, the court concluded that she lacked standing to seek injunctive relief as to her barriers-to-access claim in Count I. The Court dismissed Count I with prejudice.

10

## IV.  DISMISSAL OF COUNT I FOR LACK OF SUBJECT MATTER JURISDICTION UNDER RULE 12(b)(1)

### A.    Article III Standing Principles

Under Article III of the Constitution, our jurisdiction is limited to "cases" and "controversies."  U.S. Const. art. III, § 2; Christian Coal. of Fla., Inc. v. United States, 662 F.3d 1182, 1189 (11th Cir. 2011).  The standing doctrine "stems directly from Article III's 'case or controversy' requirement" and "implicates our subject matter jurisdiction."  Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005) (quotation marks omitted).

To establish standing under Article III, a plaintiff must demonstrate: (1) an injury-in-fact; (2) a causal connection between the asserted injury-in-fact and the defendant's actions; and (3) that "the injury will be redressed by a favorable decision."  Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992)).  An injury-in-fact is the "invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at 560, 112 S. Ct. at 2136 (quotation marks and citations omitted).

Plaintiffs who seek injunctive relief must make an additional showing to demonstrate standing.  Houston, 733 F.3d at 1328 ("The 'injury-in-fact' demanded by Article III requires an additional showing when injunctive relief is sought.").  "Because injunctions regulate future conduct, a party has standing to seek

11

injunctive relief only if the party shows 'a real and immediate—as opposed to a merely conjectural or hypothetical—threat of <u>future</u> injury.'" <u>Id.</u> at 1329 (quoting <u>Shotz</u>, 256 F.3d at 1081). When a plaintiff seeks an injunction, she must demonstrate that a future injury is imminent—that there is "a sufficient likelihood that he [or she] will be affected by the allegedly unlawful conduct in the future." <u>Koziara v. City of Casselberry</u>, 392 F.3d 1302, 1305 (11th Cir. 2004) (quotation marks omitted).

Kennedy seeks injunctive relief, which is the only form of relief available to plaintiffs suing under Title III of the ADA. <u>See</u> 42 U.S.C. § 12188(a)(1) (providing that the remedies available to individuals are set forth in 42 U.S.C. § 2000a-3(a), which allows a private right of action only for injunctive relief for violations of Title II of the Civil Rights Act of 1964). She must therefore demonstrate a real and immediate threat of future injury to establish standing.[3]

## B.     Rule 12(b)(1) Motion

Attacks on subject matter jurisdiction, which are governed by Rule 12(b)(1), come in two forms: facial or factual attack. <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1528–29 (11th Cir. 1990). A "facial attack" challenges whether a plaintiff "has

---

[3]For completeness, we note that our recent decision in <u>Sierra v. City of Hallandale Beach, Florida,</u> ___ F.3d ___, No. 19-13694, 2021 WL 1799848 (11th Cir. May 6, 2021), involved a different inquiry regarding past harm and standing to seek compensatory damages under Title II of the ADA. Although <u>Sierra</u> did not concern injunctive relief, it illustrates how the standing inquiry differs based on the remedy sought. <u>See id.</u> at *2–3.

sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Id. at 1529 (quotation marks omitted). A "factual attack," in contrast, challenges the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered. Id. A district court evaluating a factual attack on subject matter jurisdiction "may proceed as it never could" at summary judgment and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. (quotation marks omitted).

Here, Floridian's motion focused exclusively on Kennedy's standing to seek injunctive relief, relied on her deposition testimony and declarations, and challenged "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." See id. at 1529 (quotation marks omitted). The district court reasonably construed Floridian's motion for summary judgment as a factual attack on subject matter jurisdiction under Rule 12(b)(1).

Kennedy argues that the district court erred in proceeding under Rule 12(b)(1) because (1) her intent to return to the Hotel in the future was inextricably intertwined with the merits of her ADA claim, and (2) therefore the proper course was for the district court to find that jurisdiction exists and deal with Floridian's motion as a direct attack on the merits of her case. See Morrison v. Amway Corp., 323 F.3d 920, 925 (11th Cir. 2003) (stating a district court is permitted to rely on

13

the Rule 12(b)(1) standard when addressing a jurisdictional challenge that does not implicate the merits of a plaintiff's cause of action).

We first compare the nature of Kennedy's ADA claim and Floridian's jurisdictional challenge. Kennedy's cause of action is an ADA statutory claim. Kennedy's Count I alleged violations of Title III of the ADA, which "prohibits discrimination by private entities in places of public accommodation." Gathright–Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1272 (11th Cir. 2006); 42 U.S.C. § 12182(a). Section 12182 governs the removal of architectural barriers in facilities constructed prior to the enactment of the ADA, and § 12183 governs new construction and alterations after this date. See Gathright–Dietrich, 452 F.3d at 1272–73; 42 U.S.C. §§ 12182(b)(2)(A)(iv), 12183(a). The elements of Kennedy's ADA discrimination claim are: (1) she is an individual with a disability under the ADA; (2) Floridian owns or operates a place of public accommodation within the meaning of the ADA; and (3) Floridian discriminated against her. See 42 U.S.C. § 12182(a). Kennedy visited the Hotel once, albeit briefly, encountered alleged barriers in the past, and sufficiently alleged an ADA claim.

In contrast, Floridian's jurisdictional challenge involves standing, a doctrine that stems from Article III's case or controversy requirement and thus affects our (and the district court's) subject matter jurisdiction. Bochese, 405 F.3d at 974. Kennedy's standing to pursue injunctive relief requires a separate showing of a real

14

and immediate threat of <u>future</u> injury.  <u>See</u> <u>Houston</u>, 733 F.3d at 1329.  That showing of future injury does not relate to the merits of her underlying ADA claim. The facts necessary to establish Kennedy's standing—which relate to her intent to return to Floridian's Hotel in the future—thus do not implicate the merits of her cause of action under the ADA.  <u>See</u> <u>Morrison</u>, 323 F.3d at 924–25.

This is not a case in which the district court concluded it lacked federal question jurisdiction over Kennedy's ADA action because she failed to allege a prima facie violation of the statute or because the ADA was inapplicable.  <u>See</u> <u>id.</u> at 926 ("In order to determine if a defendant qualifies as an 'employer' and, consequently, whether [the Age Discrimination in Employment Act ("ADEA")] <u>will even apply</u>, we must turn to ADEA's definitions' section." (emphasis added) (quoting <u>Garcia v. Copenhaver, Bell & Assocs.</u>, 104 F.3d 1256, 1262–63 (11th Cir. 1997))).  There has never been any contention that the ADA was inapplicable to Floridian.  And, as the district court noted, there has never been any real dispute as to whether Kennedy's complaint states a prima facie claim for a violation of the ADA.

Instead, this is a case where the district court concluded it was without jurisdiction over Kennedy's claim because she lacks standing to pursue the requested (and only available) relief, and therefore no Article III case or controversy exists.  This case is thus readily distinguishable from <u>Morrison</u> and the

15

other cases on which Kennedy relies.  Her standing to pursue injunctive relief—unlike, say, whether a defendant company qualifies as an "employer" under a particular statute—has nothing to do with whether Floridian is subject to the ADA or has violated it.  See id. at 927–28.

We recognize that injunctive relief is the only remedy available under 42 U.S.C. § 12188.  And Kennedy stresses that no plaintiff can prevail in an ADA case unless they prove a real and immediate threat of future injury.  This still does not make intent to return to the Hotel in the future an element of her cause of action.  An injunction is a type of relief or remedy rather than an independent cause of action.

At base, Kennedy's argument is that any plaintiff must show they have standing to pursue the relief requested, but that is true in every case.  The fact that the statute limits the remedy for an ADA violation to injunctive relief does not transform this threshold standing inquiry into an impermissible merits determination.  Kennedy is of course correct that her intent to return is an important part of proving she is entitled to injunctive relief (the remedy prescribed by the statute), but that showing is required not by the statute, but by the Constitution.  See Houston, 733 F.3d at 1328–29.

Because Kennedy's standing to seek injunctive relief was not inextricably intertwined with the merits of her ADA discrimination claim, the district court did

not err in construing Floridian's motion for summary judgment as a factual attack

on its subject matter jurisdiction under Rule 12(b)(1). See Morrison, 323 F.3d at

924–25. The court was therefore permitted to make credibility determinations and

weigh the evidence. See Lawrence, 919 F.2d at 1529.

## C.    Evidentiary Hearing

Even if the district court properly proceeded under Rule 12(b)(1), Kennedy

argues that she was entitled to an evidentiary hearing because a factual issue

concerning her standing—namely, whether she intended to return to the Hotel in

the future—was in dispute.

In ruling on a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, it is

within the district court's discretion "to devise a method for making a

determination with regard to the jurisdictional issue." See Odyssey Marine Expl.,

Inc. v. Unidentified Shipwrecked Vessel, 657 F.3d 1159, 1170 (11th Cir. 2011)

(quoting Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994)). In

Rule 12(b)(1) dismissal cases, "a plaintiff must have ample opportunity to present

evidence bearing on the existence of jurisdiction." Colonial Pipeline Co. v.

Collins, 921 F.2d 1237, 1243 (11th Cir. 1991).

Although the court may consider both oral and written evidence in the

record, an evidentiary hearing is not required. Odyssey Marine, 657 F.3d at 1170.

In Odyssey Marine, we held the district court did not abuse its discretion in

17

declining to hold an evidentiary hearing on a Rule 12(b)(1) motion where the record before the district court was extensive and "[e]ach party had a full opportunity to present evidence," including affidavits, counter-affidavits, documents, and photographs.  Id.; see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed.) (stating that "[a]lthough a formal hearing on the matter is not required, the district court should not dismiss the complaint on a Rule 12(b)(1) motion without giving the nonmoving party the opportunity to be heard").

In the specific context of this case, the district court did not abuse its discretion in declining to hold an evidentiary hearing.[4]  The record was well developed, and Kennedy had ample opportunity to present facts and evidence to support her standing.  Notably, Kennedy submitted three declarations in which she presented facts concerning standing, and the district court had before it her two complete deposition transcripts.

Kennedy relies on this Court's decision in Bischoff v. Osceola County, 222 F.3d 874 (11th Cir. 2000).  However, in that case, the district court: (1) was faced with two "warring affidavits on issues essential to standing" and no deposition or oral testimony; (2) credited defendants' version of events; and (3) sua sponte

---

[4]We review a district court's decision not to hold an evidentiary hearing for an abuse of discretion.  Odyssey Marine, 657 F.3d at 1169.

18

dismissed the case for lack of standing without a hearing. See id. at 878–79, 885.

On appeal, this Court held that where "the evidence relating to standing is squarely

in contradiction as to central matters and requires credibility findings, a district

court cannot make those findings simply by relying on the paper record but must

conduct a hearing at which it may evaluate the live testimony of the witnesses."

Id. at 881.

This case is nothing like Bischoff. Kennedy had more than ample

opportunity to present her evidence. Indeed, Kennedy does not dispute many of

the critical underlying facts—such as that Kennedy never attended the blues

festival, went to the Hotel only once for a few hours, and, other than that one visit,

had not stayed in a Homestead hotel in several years (if ever). The district court

did make some credibility findings, but the main dispute is over the legal

conclusion as to whether Kennedy's evidence is sufficient to establish the required

standing for injunctive relief. On the well-developed record of this case, we find

no abuse of discretion in the district court's decision to evaluate Floridian's motion

under Rule 12(b)(1) and not hold a hearing. See Odyssey Marine, 657 F.3d at

1170.

D.    **Real and Immediate Threat of Future Injury**

We now turn to Kennedy's standing to pursue injunctive relief under the

ADA, which requires her to demonstrate a "real and immediate threat of future

19

injury." See Houston, 733 F.3d at 1329.  To show a real and immediate threat of future discrimination in the context of an ADA claim, a plaintiff must have "attempted to return" to the non-compliant property or "intend to do so in the future." Shotz, 256 F.3d at 1082.  In Lujan, the Supreme Court held that "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be"—are insufficient to demonstrate an injury that is "actual or imminent."  504 U.S. at 564, 112 S. Ct. at 2138. Immediacy in this context "means reasonably fixed and specific in time and not too far off." Houston, 733 F.3d at 1340 (quoting ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd., 557 F.3d 1177, 1193–94 (11th Cir. 2009)).

Whether a plaintiff faces a real and immediate threat of future injury must be examined under the "totality of all relevant facts."  See id. at 1337 n.6.  We have previously considered four factors relevant to this analysis: "(1) the proximity of the defendant's business to the plaintiff's residence; (2) the plaintiff's past patronage of the defendant's business; (3) the definiteness of the plaintiff's plan to return; and (4) the frequency of the plaintiff's travel near the defendant's business." Id.  The factors are not dispositive, only guidelines, and our standing determination is often a "fact-sensitive inquiry." Id. at 1337 n.6, 1340.

The district court's ruling contained certain fact or credibility findings and then a legal conclusion, which we discuss separately.[5]

The underlying facts regarding the first and second factors were undisputed. As to proximity, Kennedy lived 50 to 60 miles from the Hotel, and her past patronage was her one visit to the Hotel for two to three hours. As to the third factor, the definiteness of her plan to return to the Hotel, Kennedy presented three potential reasons why she would return in the immediate future: (1) to see her unidentified friend in the Keys; (2) to attend the blues festival; and (3) as an ADA tester. The district court did not credit her stated reasons for returning, and on this record, Kennedy has shown no clear error in that credibility finding.

First, as to her friend in the Keys, the district court correctly observed that Kennedy never wound up seeing the friend or making plans to reschedule her trip, could not recall the friend's name, and did not know his address. Second, as to the blues festival, Kennedy could not recall when she had first heard of the festival or exactly where it was held, had never purchased tickets for the festival, did not

_____

[5]In reviewing the dismissal of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1), we review de novo the district court's legal conclusions, including conclusions concerning standing, and we review for clear error the district court's findings of jurisdictional facts. Houston, 733 F.3d at 1328. Kennedy contends the district court made improper credibility determinations in evaluating her evidence regarding her intent to return to the Hotel, but this argument presumes the summary judgment standard should have applied. As explained above, the district court properly construed Floridian's motion for summary judgment as a Rule 12(b)(1) factual attack on jurisdiction. Thus, the court was permitted to make credibility determinations and weigh the evidence. See Lawrence, 919 F.2d at 1529.

attend the festival due to illness, and had no concrete plans to go to the festival the next time it was held. The court also noted that Kennedy disavowed any connection between her October 2018 reservation attempt and the April 2019 festival.

Third, as to her status as an ADA tester, the district court considered Kennedy's evidence of her system for tracking her ADA cases. The court found this evidence fell short because it did not provide any assurance of <u>when</u> property revisits would occur, or if they would occur with any degree of immediacy. It also noted that Kennedy testified that she would revisit properties only when she "need[ed] to" and that she did not identify any specific methodology for ensuring her return. Without such information, the court did not clearly err in finding Kennedy's tracking system did not give rise to sufficiently definite intent to return to the Hotel.

Separate from these three reasons for a return visit, Kennedy also presented evidence regarding her travel to Homestead generally. In a declaration, Kennedy stated that she has been to Homestead 100 times and frequently travels throughout Florida "including Homestead." In her earlier deposition, however, Kennedy admitted that she did not visit Homestead often and had not stayed in a Homestead hotel for at least several years, other than her single visit to Floridian's Hotel for two to three hours. The district court found Kennedy's evidence failed to establish

22

regular travel to Homestead, as there was no indication of why, when, or how recently such visits occurred, and it was contrary to her more specific deposition testimony. Given the lack of detail in Kennedy's declaration, and her more specific deposition testimony, we discern no clear error in the court's finding that Kennedy was not a frequent traveler to Homestead.

That leaves us with these undisputed facts. Kennedy visited the Hotel once, for a few hours. She attempted—but failed—to make an online reservation for April 6–7, 2019, that was not connected to the blues festival. She is an ADA tester who has a system in place for noting property revisits, but no system for ensuring when revisits will occur. She does not travel to Homestead frequently, and other than her one brief visit to Floridian's Hotel, she has not stayed in a Homestead hotel for at least several years (if ever).

Having considered the totality of the relevant facts and examined the evidence under the Rule 12(b)(1) standard, we conclude Kennedy failed to demonstrate a real and immediate threat of future injury that goes beyond the type of vague, "some day" intention the Supreme Court found insufficient in Lujan. See Lujan, 504 U.S. at 564, 112 S. Ct. at 2138.

The cumulative evidence here is materially different from that in Houston, an ADA-tester case where we concluded the plaintiff had standing to seek injunctive relief as to architectural barriers at a supermarket. Houston, 733 F.3d at

23

1336–41.  As to proximity, Houston lived 30.5 miles away from the supermarket. Id. at 1336.  He lived in the next county, not "hundreds of miles away." Id.  More importantly, Houston drove "right by the store on a regular basis" because it was on the way to, and within two miles of his attorney's office, which he visited frequently.  Id. at 1336, 1340.  Plus, Houston had visited the supermarket twice in the months before he filed suit and had a receipt from his second visit.  Id. at 1336. Added to all this, we noted the fact that ADA testing was "Houston's avocation or at least what he does on a daily basis" made it more likely that Houston would return to the supermarket.  Id. at 1340.  Based on these specific facts, we concluded that Houston's intent to return to the supermarket in the future could not be characterized as the unspecified "some day" intention the Supreme Court found too speculative in Lujan.  Id.

Although Kennedy, like Houston, is an ADA tester, she visited the Hotel only once, for a few hours.  Her singular visit does not weigh in her favor, as she must have "attempted to return" or at a minimum "intend to do so in the future." Shotz, 256 F.3d at 1082.  She did not travel frequently to Homestead or regularly stay at Homestead hotels (if ever).  She had no credible or concrete plan to return to Homestead or the Hotel in the future.  Her generalized intent to return sometime in the future is alone insufficient.  The totality of relevant facts simply do not support the conclusion that Kennedy faced a real and immediate threat of future

24

discrimination at the Hotel.[6]  Cf. D'Lil v. Best W. Encina Lodge & Suites, 538 F.3d 1031, 1037–38 (9th Cir. 2008) (concluding ADA plaintiff demonstrated intent to return to hotel where she had visited the area regularly for business, visited friends in the area, and vacationed there with her children); Scherr v. Marriott Int'l, Inc., 703 F.3d 1069, 1074–75 (7th Cir. 2013) (concluding ADA plaintiff had alleged intent to return to hotel where much of her extended family lived in the area close to the hotel and plaintiff planned to attend a then-upcoming wedding in area).  Given our fact-sensitive inquiry, the district court did not err in concluding Kennedy lacked standing to pursue injunctive relief and dismissing Count I for lack of subject matter jurisdiction.

Nevertheless, the district court erred in dismissing Count I for lack of jurisdiction with prejudice.  "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008); see also Betty K Agencies, Ltd. v. M/V Monada, 432 F.3d 1333, 1341 (11th Cir. 2005) (explaining that in the absence of jurisdiction, a court lacks the power to dismiss claims with prejudice).  While we do not disturb the district

---

[6]Kennedy's proximity to the Hotel neither helps nor hurts her.  Kennedy lives only 50 to 60 miles away from the Hotel.  On one hand, this suggests she would not stay overnight at the Hotel.  On the other hand, she has a disability and submitted that she normally spends the night in a hotel when she travels any distance.  The problem is that Kennedy visited the Hotel only once, did not stay overnight, and could not recall if she ever stayed in a Homestead hotel.

25

court's finding that amendment would be futile, it was error to dismiss Count I with prejudice. See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co., 935 F.3d 573, 581 (7th Cir. 2019) (stating that a "dismissal for lack of jurisdiction without leave to amend is not the same thing as a dismissal with prejudice," which is a ruling on the merits that carries a preclusive effect that prevents a plaintiff from relitigating anywhere any claim encompassed by her suit).

## V.  DISMISSAL OF COUNT II BASED ON CLAIM SPLITTING

The claim-splitting doctrine: (1) "requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit," and (2) applies where a second suit has been filed before the first suit has reached a final judgment.  Vanover v. NCO Fin. Servs., Inc., 857 F.3d 833, 840 n.3, 841 (11th Cir. 2017) (quoting Katz v. Gerardi, 655 F.3d 1212, 1217 (10th Cir. 2011)).  The doctrine serves "to promote judicial economy and shield parties from vexatious and duplicative litigation while empowering the district court to manage its docket."  Id. at 843.

In determining whether a party has improperly split its claims among lawsuits, this Court examines: "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions."  Id. at 841–42 (quotation marks omitted).  "Successive causes of action arise from the same transaction or series of transactions when the

26

two actions are based on the same nucleus of operative facts." Id. at 842.  In determining whether a particular grouping of facts constitutes a transaction, or series of transactions, this Court has adopted the "transactional test" from the Restatement (Second) of Judgments § 24, giving weight to considerations such as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id. (quoting Petro-Hunt, L.L.C. v. United States, 365 F.3d 385, 396 (5th Cir. 2004)).  "Under the transactional test, a new action will be permitted only where it raises new and independent claims, not part of the previous transaction, based on the new facts." Id. (quoting Hatch v. Boulder Town Council, 471 F.3d 1142, 1150 (10th Cir. 2006)).

The district court did not abuse its discretion in dismissing Count II for improper claim splitting because Count II and Floridian I arise from the same transaction—Kennedy's use of Floridian's ORS—and are based on facts that are sufficiently related in time, space, origin, and motivation.[7] See id.  The complaint in this action and the amended complaint in Floridian I were filed within five months of each other.  Both lawsuits allege violations of 28 C.F.R. § 36.302(e)(1)

---

[7]We review a dismissal for improper claim splitting for an abuse of discretion.  Vanover, 857 F.3d at 837.

27

based on Floridian's ORS and are motivated by Kennedy's desire to obtain information about accessible rooms and amenities at the Hotel.

To be sure, there are some additional factual allegations in Count II of the instant lawsuit that were not in the amended complaint in Floridian I, but the cause of action was essentially the same one about Floridian's ORS.  Floridian I was based solely on Floridian's ORS through floridianhotel.com, which Kennedy alleged failed to provide accessibility information.  Count II was based on Floridian's ORS through the floridianhotel.com website and other third-party websites.  Kennedy alleged that Floridian's ORS through some of these third-party websites also did not identify accessible guest rooms at the Hotel or allow for their booking, while others omitted information about the lack of accessible features. Kennedy maintains that Floridian revised its own website sometime after she filed Floridian I and that it was still not ADA compliant, though it is not clear when she first encountered the alleged deficiencies.

These additional facts concerning how Floridian's ORS violated 28 C.F.R. § 36.302(e)(1) do not give rise to new and independent claims that are part of a separate transaction.  See Hatch, 471 F.3d at 1150.  Whether Floridian provided no information about accessibility or omitted information, Kennedy's claim was the same—Floridian prevented her from obtaining the information she needed to determine whether the Hotel was accessible.

28

Kennedy raises several other arguments that are without merit, only one of which warrants any discussion. Kennedy argues we should not apply the rule against claim splitting because the district court dismissed Floridian I with prejudice, concluding that further amendment could not cure the standing defect in that ORS case. Kennedy argues this created a "[c]atch-22" that left her with no recourse to pursue her ORS claims. This argument ignores the fact that Kennedy was allowed leave to amend in Floridian I and had the opportunity to include her additional factual allegations regarding Floridian's ORS. There was no catch-22. It was within the district court's discretion to conclude that Count II in the second case involved the same ADA-non-compliance claim about Floridian's ORS and did not state a new and independent ADA claim.[8]

## VI. CONCLUSION

For the reasons above, we affirm the district court's dismissal of Count II for claim splitting. We also affirm the district court's dismissal of Count I for lack of standing, except to the extent it dismissed Count I with prejudice. We remand the case solely so that the district court may amend its judgment to dismiss Count I without prejudice.

**AFFIRMED AND REMANDED.**

---

[8]Because the district court early on dismissed Count II based on claim splitting, the issue as to standing on Count II was neither factually developed in the district court nor ruled on by that court. While that standing issue as to Count II may be more arguable than as to Count I, we decline to rule on that issue as to Count II without first having a fuller factual development in, and ruling by, the district court.

29