[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13025

Non-Argument Calendar

_____

LARRY E. KLAYMAN,

Plaintiff-Appellant,

versus

JULIA PORTER,
HAMILTON FOX, III,
MATTHEW KAISER,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

2                    Opinion of the Court                    22-13025

D.C. Docket No. 9:22-cv-80642-AHS

_____

Before ROSENBAUM, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Larry Klayman appeals the district court's orders denying his motion to remand and dismissing his complaint for improper claim splitting. After careful review, we affirm.

## I.

Klayman is an attorney facing attorney-disciplinary proceedings by the District of Columbia Bar's Office of Disciplinary Counsel ("ODC"). The defendants—Hamilton Fox III, Matthew Kaiser, and Julia Porter—are officials of the ODC and the D.C. Board on Professional Responsibility. According to Klayman's complaint, the defendants have engaged in a "pattern and practice" of pursuing baseless and politically motivated disciplinary investigations against him because of his "conservative/libertarian private and public advocacy," with the goal of removing him from the practice of law and ultimately bankrupting him.

This is not the first lawsuit Klayman has brought seeking to collaterally attack the ODC proceedings. As relevant here, Klayman filed suit in this case, in state court, on the same day that a federal district court in the Southern District of Florida refused to remand a nearly identical case filed by Klayman. Instead, the court transferred the case to the U.S. District Court for the District of

Columbia, where the defendants were located and where six other lawsuits brought by Klayman raising similar claims were either filed or transferred.

In that prior case, the district court rejected Klayman's attempt to avoid federal jurisdiction by seeking less than $75,000 in damages and "primarily" injunctive relief. *See* 28 U.S.C. § 1332(a). Applying its "judicial experience and common sense," the court found that it was "apparent the true amount-in-controversy exceeds the jurisdictional threshold." It noted that Klayman had "previously filed six very similar actions to the present one, each one seeking in excess of $75,000," and that he had filed "an almost identical complaint in Florida state court (which was removed to federal court), voluntarily dismissed the complaint, and then refiled the present Complaint alleging an amount-in-controversy just below the jurisdictional threshold."

Immediately after that prior case was transferred to the District of Columbia, Klayman filed the present case in Florida state court seeking "injunctive relief <u>only,</u>" but leaving the underlying factual allegations essentially unchanged. The defendants removed to federal district court based on diversity jurisdiction and sought dismissal, and Klayman requested remand.

The district court denied remand, concluding it had diversity jurisdiction. The court found that "a common sense reading of the Complaint establishes that the amount in controversy satisfies the statutory threshold," citing its reasoning from the prior case.

The district court then dismissed the complaint based on the "claim-splitting" doctrine, which prohibits plaintiffs from splitting closely related claims into separate lawsuits. In the court's view, this doctrine applied because "[t]he present case involves both the same parties and arises from the same transaction or series of transactions as the previously filed case." Klayman now appeals the denial of his motion to remand and the grant of the defendants' motion to dismiss.

## II.

We start with whether the district court had subject-matter jurisdiction, which we review *de novo*. *Gupta v. McGahey*, 709 F.3d 1062, 1064–65 (11th Cir. 2013). Federal courts have limited subject-matter jurisdiction and may "hear only cases for which there has been a congressional grant of jurisdiction." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1260–62 (11th Cir. 2000).

The district court found that it had diversity jurisdiction under 28 U.S.C. § 1332. Jurisdiction exists under § 1332 where (1) the parties are "citizens of different States" and (2) "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332. It's undisputed that the parties are diverse, so the only question is whether this case involves the requisite amount in controversy.

In the absence of a specific request for damages by the plaintiff, a removing defendant bears the burden of proving by a preponderance of the evidence that the jurisdictional minimum is

satisfied. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). The defendant may meet this burden by submitting evidence or by showing that it is "facially apparent" from the pleading itself that the amount in controversy exceeds the jurisdictional minimum. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010); *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000). But "a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754–55 (11th Cir. 2010). And in resolving these issues, the district court may rely on its "judicial experience and common sense." *Roe*, 613 F.3d at 1063.

When a plaintiff seeks only declaratory or injunctive relief, as Klayman does here, the amount in controversy is measured by the value of the object of the litigation from the plaintiff's perspective. *McKinnon Motors*, 329 F.3d at 807; *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218–19 (11th Cir. 1997). In other words, the value of injunctive relief "is the monetary value of the benefit that would flow to the plaintiff if the relief he is seeking were granted." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (cleaned up). To satisfy the amount-in-controversy requirement, the benefit to be obtained from the injunction must be "sufficiently measurable and certain," not "speculative and immeasurable." *Ericsson*, 120 F.3d at 221–22.

Here, the district court did not err by denying Klayman's motion to remand. Despite seeking injunctive relief only, Klayman's complaint makes abundantly clear that the value of the object of the litigation measured from his perspective exceeds the $75,000 jurisdictional minimum. *See McKinnon Motors,* 329 F.3d at 807. The complaint sought "injunctive relief barring Defendants from continuing their unethical, illegal and unconstitutional harassment and conduct" against Klayman. It alleges that the defendants' meritless investigations had "severely financially harm[ed]" him, costing him "hundreds of thousands of dollars in money" and curtailing his ability to acquire and represent new clients. Without injunctive relief, the complaint stated, the defendants' continuing conduct would "bankrupt[] him with the huge expenditure of time, resources and money" necessary to defend himself, since it was "a sure bet that they will knowingly pursue this meritless issue to the very end." Put differently, Klayman viewed the injunctive relief as necessary not only to preserve his ability to earn a living, but also to prevent a further "huge expenditure" of money that would ultimately bankrupt him.

Given that Klayman had already spent "hundreds of thousands of dollars" to defend against the ongoing ODC investigations, which he believed would be pursued "to the very end," it is reasonable to infer that the future defense costs he sought to forestall were of similar value, or at least in excess of $75,000, even if there remains some uncertainty about the amount. *See S. Fla. Wellness,* 745 F.3d at 1316; *Roe,* 613 F.3d at 1063; *Pretka,* 608 F.3d

at 754–55.  We therefore conclude that it is facially apparent from the complaint itself—putting aside Klayman's prior litigation history—that the amount in controversy exceeded the jurisdictional minimum.  *See Roe*, 613 F.3d at 1061.

Notwithstanding Klayman's attempt to avoid federal jurisdiction, we hold that diversity jurisdiction existed because the value of the injunctive relief Klaymen sought was "sufficiently measurable and certain" and exceeded the $75,000 threshold.  *See Ericsson*, 120 F.3d at 221–22.  We affirm the district court's denial of remand.

## III.

We ordinarily review *de novo* the district court's grant of a motion to dismiss.  *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 837 (11th Cir. 2017).  We review a dismissal for improper claim splitting for an abuse of discretion where it rests on the court's case-management discretion.  *Id.* at 837–38; *see also Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1236 n.7 (11th Cir. 2021) ("We review a dismissal for improper claim splitting for an abuse of discretion.").

In essence, the claim-splitting doctrine "requires a plaintiff to assert all of [his or her] causes of action arising from a common set of facts in one lawsuit."  *Kennedy*, 998 F.3d at 1236 (quotation marks omitted).  The doctrine prevents a plaintiff from prosecuting a second suit "before the first suit has reached a final judgment," promotes judicial economy, and shields parties from "vexatious

and duplicative litigation while empowering the district court to manage its docket." *Id.* (quotation marks omitted).

To determine whether a plaintiff has improperly split his claims among lawsuits, we examine "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Vanover*, 857 F.3d at 841–42 (quotation marks omitted). "Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts." *Id.* at 842. While this test borrows from the *res judicata* test, the question "is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit." *Id.* at 841 (quotation marks omitted).

Here, the district court did not abuse its discretion or otherwise err in dismissing the present case for improper claim splitting. Klayman filed the present case while the prior case was pending, immediately after the prior case was transferred to the District of Columbia. *See Kennedy*, 998 F.3d at 1236. The two lawsuits involve the exact same parties. *See Vanover*, 857 F.3d at 841–42. And an analysis of the pertinent factual allegations found in the complaints in both cases reveals that both lawsuits arise from the same nucleus of operative facts. *See id.* Both complaints alleged the same pattern and practice of politically motivated and abusive disciplinary investigations against Klayman, based on essentially the same set of underlying facts.

Klayman nevertheless claims that the present case is distinguishable for two reasons. Neither is persuasive.

First, that Klayman seeks injunctive relief rather than damages is irrelevant to the claim-splitting inquiry. The question is whether the claims arise from the same factual predicate and involve the same parties, not whether the plaintiff requested the same remedy in both cases. *See Vanover*, 857 F.3d at 841–43.

Second, Klayman argues that the underlying facts are different because this case includes a new allegation of unlawful activity, based on an October 2021 letter and email informing Klayman of "another investigation" stemming from his litigation activity. But as the district court explained, this investigation was simply part of the same alleged pattern of activity—or "series of transactions"—that gave rise to the harms Klayman alleges. In other words, "the factual bases for both lawsuits are related in time, origin, and motivation, and they form a convenient trial unit, thereby precluding [Klayman] from splitting [his] claims among the lawsuits." *Id.* at 842–43.

Not only that, but the October 2021 correspondence predated the filing of the prior case in January 2022, which means that it could have been raised in the first action. *See In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001) (stating that res judicata prohibits relitigating a claim "that was or *could have been* raised in that action" (emphasis added). As a result, a final judgment in the prior case would have precluded a second suit based on the October 2021 correspondence. *See id.* The claim-splitting doctrine

applies in these circumstances to shield the defendants from Klayman's "vexatious and duplicative litigation."  *See Kennedy*, 998 F.3d at 1236; *Vanover*, 857 F.3d at 841.

For these reasons, the district court correctly determined that the claim-splitting doctrine prevented Klayman from simultaneously pursuing nearly identical claims against the same parties in different courts.  *See Vanover*, 857 F.3d at 841–43.  We affirm.

**AFFIRMED.**